Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail:  bheikali@faruqilaw.com

[Additional Captions on Signature Page]

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD F. WORDEHOFF,<br><br>                           Plaintiff,<br>     vs.<br>OCLARO, INC., MARISSA PETERSON, EDWARD COLLINS, KENDALL COWAN, GREG DOUGHERTY, DENISE HAYLOR, IAN SMALL, BILL SMITH, and JOEL A. SMITH III,<br>                           Defendants. | Case No.:   5:18-cv-03148<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief based upon, among other things, the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1. This action stems from a proposed transaction announced on March 12, 2018 (the "Proposed Transaction"), pursuant to which Oclaro, Inc. ("Oclaro" or the "Company") will be acquired by Lumentum Holdings, Inc. ("Lumentum").

2. On March 11, 2018, Lumentum, Prota Merger Sub, Inc. ("Merger Sub"), Prota Merger, LLC ("Merger Sub LLC"), and Oclaro entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Lumentum will acquire Oclaro in a merger transaction.

3. On May 17, 2018, Lumentum filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Oclaro common stock.

9. Defendant Oclaro is a Delaware corporation and maintains its principal executive offices at 225 Charcot Avenue, San Jose, California 95131. Oclaro's common stock is traded on the NASDAQ under the ticker symbol "OCLR."

10. Defendant Marissa Peterson has served as a director of the Company since July 2011 and as Chair of the Board since June 2013.

11. Defendant Edward Collins has served as a director of the Company since May 2008.

12. Defendant Kendall Cowan has served as a director of the Company since July 2012.

13. Defendant Greg Dougherty has served as a director of the Company since April 2009 and has served as Chief Executive Officer ("CEO") since June 2013.

14. Defendant Denise Haylor has served as a director of the Company since August 2016.

15. Defendant Bill Smith has served as a director of the Company since July 2012.

16. Defendant Joel A. Smith III has served as a director of the Company since April 2009.

17. Defendant Ian Small has served as a director of the Company since September 2017.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

19. Non-party Lumentum is a Delaware limited liability company and a party to the Merger Agreement.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

20. Oclaro designs, manufactures, and markets optical components, modules, and subsystems for the long-haul, metro, and data center markets worldwide. The company's products generate, detect, combine, and separate light signals in optical communications networks. It offers client side transceivers, including pluggable transceivers; line side transceivers; tunable laser transmitters, such as discrete lasers and co-packaged laser modulators; lithium niobate modulators to manipulate the phase or the amplitude of an optical signal; transponder modules for transmitter and receiver functions; and discrete lasers and receivers for metro and long-haul applications. The company markets its products through direct sales force, as well as through sales representatives and resellers. It serves network equipment manufacturers of telecommunications and datacom systems, and hyperscale data center operators. The company

3

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

was founded in 1988 and formerly known as Bookham, Inc. but changed its name to Oclaro, Inc. in April 2009.

21. On March 11, 2017, the Individual Defendants caused the Company to enter into the Merger Agreement. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Oclaro's stockholders, they will receive, in exchange for each outstanding share of Oclaro common stock owned immediately prior to the Merger, (1) $5.60 in cash without interest (the "Cash Consideration") and (2) 0.0636 of a share of Lumentum common stock, subject to the conditions and restrictions set forth in the Merger Agreement (the "Stock Consideration" and, together with the Cash Consideration, the "Merger Consideration").

*Preclusive Deal Protection Devices*

22. The Merger Agreement contains certain provisions that unduly benefit Lumentum by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that requires Oclaro to pay $63 million to Lumentum if the Merger Agreement is terminated under certain circumstances.

23. The Merger Agreement also contains a "No Solicitation" provision that restricts Oclaro from considering alternative acquisition proposals by, *inter alia*, constraining Oclaro's ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide written "*Acquisition Proposal*" if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

24. Moreover, the Agreement further reduces the possibility of a topping offer from an unsolicited purchaser. The Individual Defendants agreed to provide Lumentum information in order to match any other offer, thus providing Lumentum access to the unsolicited bidder's financial information and giving Lumentum the ability to top the superior offer. Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Lumentum.

4

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

1  25.    These provisions, individually and collectively, materially and improperly impede
2  the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and
3  pursuing other reasonable and more valuable proposals and alternatives in the best interests of the
4  Company and its public stockholders.

5  26.    Accordingly, the Company's true marketability is compromised by the various
6  preclusive deal protection devices of the Merger Agreement.

7  *The False and Misleading Registration Statement Omits Material Information*

8  27.    On May 17, 2018, Lumentum filed the Registration Statement with the SEC in
9  connection with the Proposed Transaction. The Registration Statement omits material
10 information with respect to the Proposed Transaction, which renders the Registration Statement
11 false and misleading.

12 *Omissions Regarding the Financial Advisor's Opinion*

13 28.    Although the Registration Statement provides stockholders with certain financial
14 projections of Oclaro (the "Oclaro Projections"), the Registration Statement fails to disclose
15 certain material projections that were relied upon by Jefferies LLC ("Jefferies") in performing its
16 valuation analyses.

17 29.    "[Jefferies] reviewed certain information furnished by Lumentum's management,
18 including financial forecasts and analyses, relating to the business, operations and prospects of
19 Lumentum" (the "Lumentum Forecasts"). The Lumentum Forecasts are particularly material in
20 considering the Proposed Transaction because part of the Merger Consideration is Lumentum
21 common stock.

22 30.    Despite the Lumentum Forecasts being essential to evaluate both the Merger
23 Consideration and the Proposed Transaction, and despite Jefferies' reliance upon the Lumentum
24 Forecasts in arriving at its opinion, the Registration Statement fails to provide the Lumentum
25 Forecasts. Without the Lumentum Forecasts, Oclaro stockholders are unable to accurately gauge
26 the value of the Merger Consideration.

27 31.    In addition to omitting the Lumentum Forecasts, the Registration Statement fails

5

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

to provide a *Discounted Cash Flow Analysis* for Lumentum despite providing one for Oclaro and despite its plain materiality to valuing the Merger Consideration. The failure to disclose or perform a *Discounted Cash Flow Analysis* for Lumentum raises concerns as to whether Jefferies is putting its thumb on the scale.

32. And even within the *Discounted Cash Flow Analysis* Jefferies reviewed for Oclaro, the Registration Statement fails to disclose: (i) the specific inputs and assumptions underlying the discount rate range of 11.0% to 13.0% used by Jefferies in its analysis; and (ii) the specific inputs and assumptions underlying the terminal value range of 4.0% to 6.0%. Without providing the inputs and assumptions underlying Jefferies' analysis, stockholders have scant information to review in considering the Proposed Transaction.

*Omissions Regarding Management's Projections*

33. The Registration Statement omits material information regarding Oclaro's management's financial projections and the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Jefferies.

34. The Registration Statement discloses certain projections for non-GAAP (generally accepted accounting principles) metrics, including Revenue, Gross Margin, non-GAAP Operating Income, Adjusted EBITDA, Free Cash Flow, and Adjusted EPS but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to their most comparable GAAP counterparts.

35. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, Oclaro stockholders must be provided with a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP.

36. On May 8, 2018 mere days before the Registration Statement was filed with the SEC, Oclaro reported its Third Quarter Financial Results and provided the below detailed reconciliation for each non-GAAP metric they used:

6
**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

## OCLARO, INC.
## RECONCILIATION OF GAAP TO NON-GAAP FINANCIAL MEASURES
### (Unaudited)

| | Three Months Ended | | |
|---|---|---|---|
| | March 31, 2018 | December 30, 2017 | April 1, 2017 |
| | (Thousands) | | |
| **Reconciliation of GAAP gross margin rate to non-GAAP gross margin rate:** | | | |
| GAAP gross profit | $ 43,564 | $ 51,828 | $ 66,788 |
| Stock-based compensation in cost of revenues | 763 | 755 | 630 |
| Restructuring and acquisition related costs in cost of revenues | — | 969 | — |
| Excess and obsolete charges in cost of revenues (2) | 3,065 | — | — |
| Non-GAAP gross profit | $ 47,392 | $ 53,552 | $ 67,418 |
| | | | |
| GAAP gross margin rate | 34.2 % | 37.2 % | 41.2 % |
| Non-GAAP gross margin rate | 37.2 % | 38.4 % | 41.6 % |
| **Reconciliation of GAAP operating income to non-GAAP operating income:** | | | |
| GAAP operating income | $ 7,931 | $ 19,255. | $ 37,740 |
| Stock-based compensation | 3,917 | 3,939 | 2,890 |
| Amortization of other intangible assets | 154 | 154 | 150 |
| Restructuring, acquisition and related (income) expense, net | 3,084 | 969 | (301) |
| Excess and obsolete charges (2) | 3,065 | — | — |
| Loss (gain) on sale of property and equipment | (19) | 169 | (16) |
| Non-GAAP operating income | $ 18,132 | $ 24,486 | $ 40,463 |
| | | | |
| GAAP operating income rate | 6.2 % | 13.8 % | 23.3 % |
| Non-GAAP operating income rate | 14.2 % | 17.6 % | 24.9 % |
| | | | |
| **Reconciliation of GAAP net income to non-GAAP net income and adjusted EBITDA:** | | | |
| GAAP net income | $ 10,807 | $ 18,737 | $ 38,214 |
| Stock-based compensation | 3,917 | 3,939 | 2,890 |
| Amortization of other intangible assets | 154 | 154 | 150 |
| Restructuring, acquisition and related (income) expense, net | 3,084 | 969 | (301) |
| Other (income) expense items, net | (906) | (936) | (233) |
| Loss (gain) on sale of property and equipment | (19) | 169 | (16) |
| Excess and obsolete charges (2) | 3,065 | — | — |
| Gain (loss) on foreign currency translation | (2,107) | (1,599) | (687) |
| Income tax effect | 1,016 | 1,687 | (125) |
| Non-GAAP net income | $ 19,011 | $ 23,120 | $ 39,892 |
| Income tax (benefit) provision | (626) | 1,489 | 746 |
| Interest (income) expense, net | (253) | (123) | (175) |
| Depreciation expense | 7,747 | 7,344 | 5,042 |

7

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

|  |  |  |  |
|---|---:|---:|---:|
| Adjusted EBITDA | $ 25,879 | $ 31,830 | $ 45,505 |
| **Non-GAAP net income per share:** | | | |
| Basic | $ 0.11 | 0.14 | $ 0.24 |
| Diluted | $ 0.11 | 0.14 | $ 0.23 |
| **Shares used in computing Non-GAAP net income per share:** | | | |
| Basic | 169,602 | 168,990 | 166,808 |
| Diluted | 171,261 | 170,692 | 169,841 |

|  | Three Months Ended | | |
|---|---:|---:|---:|
|  | **March 31, 2018** | **December 30, 2017** | **April 1, 2017** |
|  | (Thousands, except per share amounts) | | |
| **Stock-based compensation for the above included the following:** | | | |
| Cost of revenues | $ 763 | $ 755 | $ 630 |
| Research and development | 857 | 858 | 590 |
| Selling, general and administrative | 2,297 | 2,326 | 1,670 |
| Total | $ 3,917 | $ 3,939 | $ 2,890 |

37. Presenting non-GAAP metrics without their respective GAAP reconciliations renders the non-GAAP metrics provided, at best, misleading and, at worst, almost completely worthless. Indeed, defendants acknowledge in the Registration Statement that "[n]on-GAAP financial measures are not prepared in accordance with GAAP and should be considered as a supplement to, not a substitute for, or superior to, the corresponding measures calculated in accordance with GAAP." As such, stockholders are entitled to the line item projections used to calculate the Company's non-GAAP projections and a reconciliation of the non-GAAP projections to their most comparable GAAP measures.

38. The non-GAAP omissions further prevent Oclaro's public stockholders from relying on the aforementioned Jefferies analyses and fairness opinions because the materially incomplete projections were relied upon in their respective analyses as well: "[Jefferies] reviewed certain information furnished to Jefferies by Oclaro's management, including financial forecasts and analyses, relating to the business, operations and prospects of Oclaro."

39. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows

8

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

*Omissions Regarding the Background of the Merger*

40. The Registration Statement indicates that several strategic and financial parties expressed an interest and submitted offers for a transaction with the Company. The Registration Statement gives ample detail regarding the negotiations of Company A regarding its nondisclosure agreement and whether to include a standstill provision.

41. The Registration Statement, however, fails to disclose the terms of the nondisclosure agreements entered into with Companies D and F including whether they contain standstill and "don't ask, don't waive" provisions that are or were preventing those parties from submitting superior offers to acquire the Company.

42. Whether previously interested buyers were incentivized to make their best bid or are precluded from future bids is crucial to Oclaro stockholders when considering the Proposed Transaction.

43. The above-referenced material omissions, if disclosed, would significantly alter the total mix of information available to Oclaro's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Oclaro**

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material

facts necessary to make the statements therein not materially false or misleading. Oclaro is liable as the issuer of these statements.

46. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

47. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

49. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

50. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements in the Registration Statement, plaintiff is threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants**

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of Oclaro within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Oclaro and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration

10
**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

56. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

11

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

1      C.    Directing the Individual Defendants to file a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

    D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

    E.    Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

    F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: May 25, 2018

                      Respectfully submitted,

                      **FARUQI & FARUQI, LLP**

                      By: _/s/ Benjamin Heikali_
                      Benjamin Heikali, Bar No. 307466
                      10866 Wilshire Blvd., Suite 1470
                      Los Angeles, CA 90024
                      Tel.: (424) 256-2884
                      Fax: 424.256.2885
                      Email: bheikali@faruqilaw.com

                      *Counsel for Plaintiffs*

**OF COUNSEL:**

**BROWER PIVEN**
  A Professional Corporation
Daniel Kuznicki
136 Madison Avenue, 5th Floor
New York, NY 10016
Telephone:   (212) 501-9000
Facsimile:    (212) 501-0300
kuznicki@browerpiven.com

12

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**